UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL ACTION NO. 6:01-47-KKC
CIVIL ACTION NO. 6:09-7104-KKC

UNITED STATES OF AMERICA                                      PLAINTIFF

v.                    **MEMORANDUM OPINION AND ORDER**

ALI HADI SAWAF                                               DEFENDANT

\* \* \*   \* \* \*   \* \* \*   \* \* \*

This matter is before the Court on Defendant's objections to the magistrate judge's report and recommendation that his 28 U.S.C. § 2255 motion be denied without an evidentiary hearing. The Court granted Defendant's request for an evidentiary hearing limited to the issue of his trial counsel's effectiveness in advising Defendant about the government's plea offer. A hearing was held in August 2012. Defendant's request for an evidentiary hearing on the other two issues was denied. Applying the *Strickland* framework, the Court ultimately concludes that even assuming Defendant was provided deficient performance by his counsel, he simply cannot prove any prejudice. Therefore, Defendant's objections (DE 184) to the magistrate judge's report (DE 183) are sustained in part and overruled in part. Defendant's motion to vacate (DE 166) is **DENIED.**

## I. BACKGROUND

Defendant, Ali Hadi Sawaf, filed a "motion for habeas corpus, pursuant to 28 U.S.C. § 2255" alleging that the performance of his trial counsel, Russell Alred, was constitutionally ineffective.[1] This case has a lengthy and complicated history. A full summary of this case from

---

[1] While similar, a § 2255 motion is not a petition for a writ of habeas corpus. *In re Hanserd,* 123 F.3d 922, 925 (6th Cir. 1997) ("Section 2255 is, rather, a statutory remedy that Congress enacted to supplant habeas corpus for federal prisoners.") Sawaf specifically seeks the remedies provided by § 2255; he moves the Court to vacate his sentence

1

2001 to the present objections can be found in the Sixth Circuit opinion *United States v. Sawaf*, 129 F. App'x 136, 138-41 (6th Cir. 2005), and need not be repeated in full.

On appeal, the Sixth Circuit affirmed Sawaf's conviction, the sentencing guidelines calculation, and the pill count.   *Id.* at 141-142, 144-146.   The case was remanded, however, for resentencing in the context of the advisory sentencing guideline scheme set forth in *United States v. Booker*, 543 U.S. 220 (2005).   *Id.* at 143.   On remand, the Court heard arguments as to the relevant 18 U.S.C. § 3553(a) factors, but determined that the same sentence of 20 years in prison was appropriate under the advisory scheme as it had been under the mandatory guideline scheme. Sawaf appealed again, and the Sixth Circuit remanded for a third sentencing because, at the second sentencing hearing, Sawaf was not afforded his right of allocution. (DE 127).

At his third sentencing, Sawaf was represented by "different" counsel, John P. Chappell. Again, the appropriate advisory guideline range was determined to be 235 months to 293 months.   At the hearing, Sawaf made clear his belief that he had done nothing wrong.   Sawaf said, "Your Honor, I have—I would say I prescribe a regimen for the good of my patients according to my judgment and ability. I never do harm to anyone." (DE 159 at 11).   Sawaf believed that his "case has been a classical textbook for selective prosecution."  (DE 159 at 11). Sawaf went on to state that "[s]even patients testified on my behalf, your Honor, including two patients from the government, that 'Dr. Sawaf gave us bona fide medical help.'  The jury found three counts not guilty.  That means I had good faith, I was entrapped."  (DE 159 at 13).

During his allocution at the third sentencing hearing, Sawaf also discussed rejecting a plea offer from the government. Sawaf stated that his response to the offer was, "Give it to the

---

and then re-sentence him.  *See also In re Gregory*, 181 F.3d 713, 714 (6th Cir. 1999) ("In enacting § 2255, Congress provided collateral post-conviction means for a federal inmate to attack his conviction and sentence.").

jury, because I haven't done anything wrong." (DE 159 at 15).  Sawaf said that "[h]ad I known

that you would be punished severely to go to trial, I would have taken a different course.  But I

have to live with myself.  *I didn't do anything wrong.*"  (DE 159 at 16 (emphasis added)).  Sawaf

concluded by stating that "I'm not a criminal.  I don't try a criminal.  I may speak with an accent,

but I don't think with an accent.  I want to tell the world and the Iraqi people that I serve the

people.  There's prejudice in Ali Sawaf case, and everybody say that, your Honor."  (DE 159 at

19).  Again, Sawaf was sentenced to 20 years in prison.

Sawaf appealed this third sentence and ultimately, the United States Supreme Court

denied *certiorari.*  (DE 165).  Sawaf now has filed a motion to vacate that sentence under 28

U.S.C. § 2255 alleging that the performance of his counsel at trial and on his first two appeals,

Russell Alred, was constitutionally ineffective in three ways.  (DE 166).  First, Sawaf argues that

Alred failed to properly investigate and contest the Court's calculation of the pill count, used to

determine his adjusted offense level.  Second, Sawaf claims that Alred failed to properly consult

and advise him about a plea offer from the government by not explaining the relevance and

impact of the Sentencing Guidelines.  Third, Sawaf contends that Alred failed to investigate and

call as witnesses medical doctors who could opine about Sawaf's reputation within the medical

community.

The magistrate judge recommended all three of Sawaf's claims be denied without an

evidentiary hearing.  (DE 183).  Sawaf objected to each of the magistrate judge's

recommendations and argued that he was entitled to an evidentiary hearing on all issues.  (DE

184).  A prisoner who files a § 2255 motion challenging a federal conviction is entitled to "a

prompt hearing" at which the district court is to "determine the issues and make findings of fact

and conclusions of law with respect thereto."  28 U.S.C. § 2255. The Court granted Sawaf's

request for an evidentiary hearing but confined the scope of the hearing to Sawaf's claim that before his trial, Alred failed to fully advise him of the probable punishment under the Sentencing Guidelines which were at that time mandatory. (DE 191; DE 206). The ineffective assistance of counsel claims not at issue in the evidentiary hearing will be addressed first, followed by a discussion of the claim regarding the plea offer.

## II. DISCUSSION

A petitioner seeking relief under § 2255 "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 497 (6th Cir. 2003). Here, Sawaf's allegations fall into the first category because he claims that his constitutional right to effective assistance of counsel was violated. Sawaf must prove these allegations by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). To prevail on an ineffective assistance of counsel claim, the defendant must meet the two-pronged *Strickland v. Washington* test. 466 U.S. 668 (1984). *See also Mallett*, 334 F.3d at 497 (applying *Strickland* in context of § 2255 motion). First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Second, the deficient performance must have prejudiced the defendant. *Id.* at 687.

### A. __Failure to Contest the 'Pill Count'__

Sawaf argues that his counsel was ineffective because "he failed to properly investigate or contest the 'pill count' of 87,760 set forth in the PSR [presentence investigation report]." (DE 166 at 5). Sawaf was convicted of eight drug-related counts. Count 1, the "umbrella count," charged Sawaf "with knowingly distributing Schedule II, III, and IV controlled substances by

4

writing or approving prescriptions that were not in the usual course of his particular practice. The remaining seven counts involved particular prescriptions issued by Defendant to law enforcement officers working in an undercover capacity." *Sawaf*, 129 F. App'x at 138. Sawaf argued at trial, at sentencing, and on appeal that the pill count should have been limited to the number of pills charged in the indictment, without consideration of the relevant conduct considered in Count 1. *Id.* at 144-45. The Sixth Circuit rejected this argument as "unpersuasive in light of the trial testimony from pharmacists who filled Defendant's prescriptions and the detailed application of the sentencing guidelines by the probation officer for each of the counts for which Defendant was convicted." *Id.*; *see also* 21 U.S.C. § 841(b)(1)(C) (providing maximum penalties for illegal distribution or dispensation of schedule II, III, and IV controlled substances without regard to the quantity of drugs involved).

The sentencing court must consider all conduct that is part of the "same course of behavior"—which the Guidelines define as "Relevant Conduct." *Setser v. United States*, 132 S.Ct. 1463, 1475 (2012). The Guidelines command that "the base offense level" shall include "all acts and omissions committed . . . by the defendant" U.S.S.G. § 1B1.3(a) (2001). Sawaf was convicted of Count 1 which charged him with knowingly distributing Schedule II, III, and IV controlled substances by writing or approving prescriptions that were not in the usual course of his particular practice. This count was not limited to specific prescriptions, so all prescriptions not written for a medical purpose constituted relevant conduct.

The initial PSR concluded that Sawaf wrote prescriptions without a legitimate medical purpose for 87,760 pills/tablets of Schedule II and III controlled substances. These prescriptions were obtained by Sawaf's patients at pharmacies in Kentucky, Tennessee, and Virginia. (DE 88, PSR maintained under seal, at 9). The original PSR based this conclusion on the documentation

5

of prescription medication provided by the United States Attorney, the testimony from pharmacists at trial, and testimony at trial of experts who stated that none of Sawaf's prescriptions for controlled substances had a medical basis.  (*Id.* at 9-10).  Alred timely filed objections to the PSR's pill count calculation.  Before sentencing, the probation officer reviewed Alred's objections and revised the PSR favorably to Sawaf.  The probation officer clarified that the pill count was based on "pharmacy printouts which were submitted into evidence" at trial. The Court rejected Sawaf's argument that only the number of pills listed in the indictment should be counted.  After announcing that the total offense level was 36, the Court asked if there was any objection to the Guidelines calculation, and the following exchange took place:

> Mr. West: Not from the United States, your honor.
> Mr. Alred: Your Honor, we just renew our objection that none of the pills should be a counted ---
> The Court: Your objection is noted for the Record.
> Mr. Alred: Thank you.
> The Court: Based on the pill count cited by the Court, do you object to this calculation based on the Court's pill count being utilized?
> Mr. Alred: No, your Honor.

(DE 107 at 14).

Sawaf now claims that Alred "failed to properly investigate or contest the 'pill count'" at sentencing.  (DE 166).  Specifically, Sawaf argues that Alred should have forced the government to present evidence that every prescription was written without a medical purpose and hired an expert witness to investigate each prescription to contest the government's evidence. The magistrate judge rejected this argument because Alred's strategic decision to contest the pill count in one way, but not in the particular manner that Sawaf proposes, was not objectively unreasonable (DE 183) and the Court adopts the magistrate judge's reasoning.

At trial, the government presented overwhelming evidence that from October/November 2000 until his arrest on February 1, 2001, all of Dr. Sawaf's prescriptions for controlled substances were written without a medical purpose and could therefore be included as relevant conduct. For example, Dr. Douglas Kennedy, a pain management expert with extensive experience prescribing controlled substances in Kentucky testified, that he reviewed a sample of 50 patient files seized from Sawaf's office, (Trial Tr. at 738-39) and concluded that "[b]ased on the records viewed above, there appears to be no evidence that the practice of medicine was occurring, period." (*Id*. at 757). Dr. Kennedy testified that although "Dr. Sawaf would occasionally prescribe an antibiotic or antihistamine . . . . [e]ach of the patients received controlled substances for their symptoms and complaints, period." (*Id*.) Dr. Kennedy testified there was "no rhyme, nor reason involved or any logical process as one would expect for evaluating, diagnosing and treating the patient's complaint." (*Id*.) Every one of Dr. Sawaf's patients "received potent opioid and/or anxiolytic medication for no apparent reason other than a subjective complaint." (*Id*.) Dr. Kennedy concluded that of the 50 patient files he reviewed, every single prescription for controlled substances was not issued in the usual course of professional medical practice. (*Id*. at 759).

On cross-examination, Alred did not attack the factual basis for Dr. Kennedy's medical opinion. This strategic decision was not objectively unreasonable because all of the evidence at trial supported Dr. Kennedy's conclusion that Sawaf was not practicing medicine, but simply writing prescriptions based on subjective complaints. Numerous Harlan pharmacists testified that they stopped accepting Dr. Sawaf's prescriptions because they suspected he was writing them with no medical basis.

At trial, Alred tried to attack Dr. Kennedy's opinion through the testimony of seven patients and Dr. Sawaf himself.  The patients' testimony, however, only supported Dr. Kennedy's conclusion that Sawaf was not writing prescriptions for a legitimate medical purpose. For example, one patient, Danny Ball, testified that he received a prescription for pain pills from Dr. Sawaf to treat his back pain caused by an enlarged prostate.  (Trial Tr. 1184-85).  Ball did not make an appointment with Dr. Sawaf.  Rather, he just walked in and received pain medication from Sawaf without the benefit of a prostate exam.  (*Id.* at 1185).

Dr. Sawaf also testified and adamantly defended his method for prescribing controlled substances.  For example, he testified that he did not need x-rays or other diagnostic test results to prescribe controlled substances. (*e.g.* Trial Tr. 1347, 1349-50, 1357).  Sawaf testified that he did not need to take patients' vital signs because "[w]e need vital signs on only one visit.  I told her we don't do it every time the patient come."  (Trial Tr. 1362).  Further, Sawaf admitted that his office had no basic equipment such as a scale, a blood pressure cuff, or an examination table. (Trial Tr. 1364-65).  Despite these obvious deficiencies, Sawaf defended his practice of seeing patients and prescribing controlled substances.  Additionally, Sawaf testified that he would prescribe controlled substances to patients who admitted they were addicted to those same controlled substances to "treat their [addiction] symptoms, withdrawal symptoms for a short period of time until they get further treatment."  (Trial Tr. 1396).

Upon review of his patient files, Sawaf attempted to explain why he prescribed controlled substances to particular patients.  For example, Sawaf read from one patient's file, a Mr. Taylor, recently released from the Trillium addiction center.  Dr. Sawaf's file said that Mr. Taylor "was discharged yesterday and placed on methadone.  He is recovering now with craving for Oxycontin.  Bow flex and knee pain. He was placed on Oxycontin for dependence withdrawal

symptoms. Assessment. Leg pain." (Trial Tr. 1403).  Sawaf testified that rather than calling the drug treatment center, he "took it my own to treat his symptoms." (*Id.*).  Remarkably, Sawaf treated his patient, a recovering addict, for drug withdrawal symptoms only one day after the patient was released from a drug treatment center.

At trial, Alred questioned Dr. Kennedy about the time frame in which patient files were compiled and prescriptions were written.  Alred established that the earliest file was dated September, 2000. (*Id.* at 775).  Based on this line of questioning, Alred succeeded in reducing the time period in which the court considered relevant conduct at sentencing.

Alred chose not to call an expert witness at trial or sentencing to contest the evidentiary basis for the pill count at sentencing. Sawaf argues that this strategic decision constitutes ineffective assistance of counsel, and in support, he cites two Seventh Circuit cases decided years after Alred's choice. *See United States v. Chube*, 538 F.3d 693, 705-06 (7th Cir. 2008); *United States v. Rosenberg*, 585 F.3d 355, 357-58 (7th Cir. 2009).  In those cases, the Seventh Circuit held that the district court may not rely on sampling or extrapolation. *See, e.g., Chube*, 538 F.3d at 705. ("[f]or a prescription to be included in relevant conduct, the court must evaluate the facts surrounding that particular prescription and explain why those facts render it unlawful.").

As evidence that Alred should have objected to the factual basis for the pill count, Sawaf submits the sworn declarations of two doctors, who he claims would have been willing to testify as to Sawaf's character and/or as expert witnesses if they had been called by defense counsel. (DE 180 at 6-9).  The declarations, however, do not establish that these doctors have any actual knowledge of whether Dr. Sawaf's prescriptions from October/November 2000 until February 2001 were written for an actual medical purpose.  Sawaf presents no evidence that any of his prescriptions from this period were issued for an actual medical purpose.

9

At the time of his sentencing, prior to *Chube*, the Sixth Circuit permitted a district court to "draw[] certain inferences . . . that the testimony of the relevant patients" showed that the defendant doctor was not "prescribing controlled substances . . . for legitimate medical purposes." *United States v. Leal*, 75 F.3d 219, 229 (6th Cir. 1996) *abrogated* on other grounds by *United States v. Kennedy*, 107 F. App'x 518, 519 (6th Cir. 2004)). Alred's decision not to challenge the extrapolation was not objectively unreasonable because such extrapolation was permissible. Moreover, the evidence overwhelmingly supported the extrapolation. Additionally, Alred's decision not to investigate hiring expert witnesses to challenge the legitimacy of individual prescriptions was not objectively unreasonable because the evidence was overwhelming that there were no legitimate prescriptions and Sawaf has offered nothing to the contrary. Having heard the evidence, it is difficult to imagine that trained and licensed experts would have testified on Sawaf's behalf when confronted with the facts of this case.

**B. Failure To Investigate Additional Doctors to Testify at Trial and Sentencing**

Next, Sawaf argues that his attorney was ineffective by failing to investigate doctors and call them as witnesses to opine about his reputation within the medical community. The Court has reviewed the magistrate judge's report and recommendation on this issue (DE 183 at 15-17) and Sawaf's objections to the report. (DE 184 at 12-14). The Court adopts the magistrate judge's report and recommendation on this issue as its own and overrules Sawaf's objections. Alred's decision not to investigate Sawaf's former colleagues at the Daniel Boone Clinic to serve as character witnesses was not objectively unreasonable. Sawaf's record at that clinic was never an issue and could not have affected the trial or sentencing. Sawaf was convicted for what he did after he left the Daniel Boone Clinic, and so failing to investigate possible character witnesses who were familiar with his history at the Daniel Boone Clinic is not objectively unreasonable.

10

### C.  **Failure to Advise in Plea Bargaining**

Finally, Sawaf argues that Alred was ineffective for failing to advise him of the application of the Sentencing Guidelines before he rejected a plea offer and proceeded to trial. The Court held an evidentiary hearing on this issue in August 2012.  Even assuming Sawaf has shown Alred's performance was objectively unreasonable, Sawaf's motion to vacate must be denied because he was not prejudiced by Alred's performance.  The evidence demonstrates that even with effective counsel, Sawaf would not have accepted the government's plea offer because Sawaf asserted, and most importantly, continues to assert that he is innocent.

It is undisputed that before trial, the government offered Sawaf a plea deal in which the government would effectively limit the court's consideration of relevant conduct and recommend that Sawaf be sentenced to 41 months in prison. Sawaf was informed of this offer, rejected it, and went to trial.  (DE 203, Agreed Stipulations of Fact).  Sawaf argues that the advice and counsel he received in relation to the plea offer constituted ineffective assistance of counsel.

In his initial motion, Sawaf argued that Alred did not advise him of the statutory maximum penalty that applied in his case.  Specifically, Sawaf stated that Alred did not explain "the likely length of the sentence . . . should he go to trial." (DE 166 at 5).  Sawaf said that he was "confused, and went to trial without the understanding that if convicted, he could receive a sentence of up to 20 years on the drug counts alone." (*Id.* at 13).  Sawaf did not allege that Alred never told him about the federal Sentencing Guidelines, but that Alred "never explained to Dr. Sawaf that if he proceeded to trial . . . he would be exposed to a sentence 3 to 4 times . . . longer than the 5 year sentencing recommendation offered in the plea proposal."  (*Id.* at 13). Sawaf stated that "Mr. Alred never advised me that the statutory maximum sentence if I was convicted at trial on the drug charges would be at least 20 years, and that I could realistically be facing 20

11

years in prison." (*Id.* at 3). The government disputed Sawaf's contention that he did not know he faced a 20 year maximum and cited Alred's affidavit in which Alred states that he explained the statutory maximum to Sawaf. (DE 173 at 3). Additionally, the government noted that the indictment set forth the maximum penalties (DE 1) and that Sawaf was given a copy of the indictment at arraignment. (DE 12).

Sawaf now argues that "Mr. Alred failed to advise Dr. Sawaf that the applicable Sentencing Guidelines were at least 235 to 293 months . . . . As a consequence, Dr. Sawaf could not make an informed decision about the plea offer." (DE 179 at 2). Unlike his initial motion, Sawaf's reply correctly distinguishes between the statutory maximum and the Sentencing Guidelines. (DE 179 at 3-5).

The magistrate judge, understandably, only addressed Sawaf's argument raised in his initial motion and affidavit—that he was not advised of the statutory maximum before rejecting the government's plea offer. (DE 183 at 11-15). Sawaf objected to the magistrate judge's recommendation because it did not discuss Sawaf's subsequent argument that he was not advised of the Guidelines before rejecting the government's plea offer. (DE 184 at 1-7). Sawaf was granted an evidentiary hearing on this limited issue.[2]

Defendants have a Sixth Amendment right to counsel that extends to the plea-bargaining process. *Lafler v. Cooper*, — U.S. —, 132 S.Ct. 1376, 1384 (2012). "During plea negotiations defendants are entitled to the effective assistance of competent counsel." *Id.* (internal quotation marks omitted). "[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Lafler*, 132 S.Ct. at 1384 (quoting *Hill v.*

---

[2] The court is cognizant of the fact that on February 25, 2013, United States Supreme Court recently granted certiorari on this issue in *Titlow v. Burt*, 680 F.3d 577 (6th Cir. 2012).

*Lockhart*, 474 U.S. 52, 57 (1985)).  The first part of the test, deficient performance, "is nothing more than a restatement of the standard for attorney competence."  *Hill*, 474 U.S. at 58 (1985).  The second part, prejudice, "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Id.*

 1.  **Deficient Performance**

  *Strickland*'s performance prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'"  *Hill*, 474 U.S. at 57 (quoting *Strickland*, 466 U.S. at 688).  In the context of plea bargaining, an "attorney has a clear obligation to fully inform h[is] client of the available options."  *United States v. Smith*, 348 F.3d 545, 552 (6th Cir. 2003).  "[T]he failure to convey a plea offer constitutes ineffective assistance but in the context of the modern criminal justice system, which is driven largely by the Sentencing Guidelines, more is required."  *Id.* at 552-53 (citation omitted).  "A criminal defendant has a right to expect at least that his attorney will . . . explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available."  *Id.*  The importance of the federal Sentencing Guidelines makes it almost impossible to fully explain the sentencing exposure of each option available "without completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time."  *Id.*  (citing *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) (observing that "the Sentencing Guidelines have become a critical, and in many cases, dominant facet of federal criminal proceedings" such that "familiarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation")).

13

A hearing was held in August 2012 in an effort to clarify the extent of Alred's advice about the federal Sentencing Guidelines before Sawaf rejected the government's plea offer. At the hearing, Sawaf testified that he was "never" advised of the maximum statutory penalty or the likely Guidelines sentence he would face if convicted at trial. Sawaf testified that Alred informed him only of plea offers of 44 months and 41 months based on limiting the relevant conduct to 11,000 pills and 3,000 pills, respectively. Sawaf said that in response to each offer, he asked Alred to negotiate for a lower sentence. Sawaf testified that he never heard the word guideline and never saw a Guidelines book or Guidelines table prior to sentencing. Sawaf alleges that "after the sentencing" Alred said "I just purchased a book—books. It cost me $380 for the Guidelines." (DE 212, Evidentiary Hr'g Tr. 27).

Sawaf's trial counsel also testified at the hearing, but offered little substance in his testimony. Alred simply could not remember the specifics of Sawaf's case. Although he recalled having access to online tools such as Westlaw and LexisNexis, Alred could not recall whether he had a copy of the federal criminal code or the federal Sentencing Guidelines when the case started in 2001. (DE 212 at 50). Alred stated that he "specifically recall[ed] going over the statutory maximums" but did not recall going over the Guidelines with Sawaf. (*Id.* at 51). He was certain that he allowed Sawaf to make the ultimate decision about whether to accept the government's plea offers. (*Id.* at 59; 79). Alred's testimony is best summarized with the following response: "I specifically remember telling him about the statutory ranges, the maximum. I don't know if I told him about the Guidelines or not, because I just don't remember that. And I wished I would tell you I do remember that, but I don't remember that." (*Id.* at 61.) Alred remembered making objections to the pill count at sentencing, but did not recall discussing

14

with Sawaf relevant conduct and how the number of pills would be calculated at sentencing. (*Id.* at 73-74).

Stephanie Sawaf, Ali Sawaf's daughter-in-law, also testified at the August 2012 hearing that she met Alred at his office on December 29, 2003. In that meeting, Stephanie Sawaf says that "Alred said that he had to go out and purchase a sentencing guidelines book" and that this was "after Ali had been convicted." (DE 212 at 95-96). Sawaf points to this testimony in support of his assertion that Alred did not advise him of the Sentencing Guidelines, and there is no evidence in the record to contradict this conclusion. Alred does not remember advising Sawaf of the Guidelines—something that should be routine in every federal criminal defense. More importantly, Alred did not reflect that it was his "standard practice" to advise a defendant about the Guidelines. (*Id.* at 60-61). Therefore, the testimony of Sawaf and his daughter-in-law remains unrefuted by Alred. Portions of their testimony, however, are contradicted by the record and call into doubt their memory or truthfulness.

Sawaf maintains that he was not advised of the statutory maximum he faced if convicted, stating that "Mr. Alred never advised me that the statutory maximum sentence if I was convicted at trial on the drug charges would be at least 20 years." (DE 168, Sawaf Decl. 3). At the evidentiary hearing, Sawaf continued to assert that he does not remember being advised of the statutory maximum by either the magistrate judge at arraignment or by Alred. However, the minute entry from Sawaf's arraignment held on August 9, 2001, in front of U.S. Magistrate Judge J.B. Johnson states that a copy of the indictment was given to the defendant and that the defendant waived a reading of the indictment. (DE 12). Sawaf entered into evidence a copy of his indictment with the penalty page missing as proof that he was not informed of the maximum penalties he faced. The Court is not persuaded by this evidence.

15

Sawaf also states in his declaration that before his sentencing "Mr. Alred told me that he did not know about or understand the federal Sentencing Guidelines, but that he had just spent several hundred dollars [I think he said $380] on books about Federal Criminal Law and/or the Federal Sentencing Guidelines." (DE 168 at 5). Stephanie Sawaf also testified that she met Alred on December 29, 2003, and he had recently purchased a new copy of the Guidelines. Regardless of whether Alred properly advised Sawaf about the Guidelines before trial, Alred was effective in arguing Guidelines issues at sentencing. Alred's objections to the PSR, arguments at sentencing, and general discussion of sentencing issues demonstrate a grasp of the sometimes complicated Sentencing Guidelines that contradicts the Sawafs' claims that he did not own or had just recently purchased the Guidelines Manual before sentencing.

At the time of Sawaf's sentencing, Alred prevailed on objections to the PSR that resulted in a reduction of the Guidelines range from 360-life to 235-293 months. (DE 107 at 17). Alred successfully argued that the maximum sentence was the statutory maximum of 240 months and not the Guidelines range. (DE 107 at 2). Alred succeeded in limiting the pill count by arguing that prescriptions from before September 2000 and the prescriptions from the acquitted counts should not be considered by the Court. (DE 107 at 3). Alred successfully argued that Sawaf's trial testimony did not warrant an obstruction of justice enhancement because his testimony did not "materially affect the United States Government's case." (DE 107 at 4-5). Alred also prevailed in arguing against a six-level enhancement for Sawaf's role in the offense because Sawaf was the only individual who engaged in criminal conduct. (DE 107 at 5-7). Alred unsuccessfully argued that Sawaf did not abuse a special skill or a position of trust because the skill or position of trust was part of the charge. (DE 107 at 8). Alred then objected to Sawaf's criminal history based on the inclusion of prior convictions. (DE 107 at 12). Finally, Alred

16

argued in favor of mitigating factors and reiterated his objection that only pills charged in the indictment should be included in the relevant conduct.  (DE 107 at 13-14).

Although Alred's performance at sentencing demonstrated knowledge and understanding of the Guidelines, there is no evidence in the record that Alred advised Sawaf about the actual implications of a Guideline Sentence before trial.  Alred's failure to fully advise Sawaf of the implications of the Guidelines in the context of the government's plea offer renders Alred's performance objectively unreasonable and constitutionally ineffective.  However, because Sawaf suffered no prejudice, he is not entitled to relief.

### 2.  **Prejudice**

To establish *Strickland* prejudice, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  This means that the defendant must show the defendant would have accepted the plea offer; the prosecution would not have withdrawn the plea offer; the court would have accepted its terms; and the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence actually imposed. *Lafler*, 132 S.Ct. at 1385.  The Sixth Circuit has "given special weight to significant disparities between penalties offered in a plea and penalties of a potential sentence in determining whether a defendant suffered prejudice by not accepting a plea offer." *United States v. Morris*, 470 F.3d 596, 602 (6th Cir. 2006) (citing *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2006) ("[A] substantial disparity between the penalty offered by the prosecution and the punishment called for by the indictment is sufficient to establish a reasonable probability that a properly informed and advised defendant would have accepted the prosecution's offer.")  Unlike other circuits, the Sixth Circuit does not require a defendant to "support his own assertion that he

17

would have accepted the offer with additional objective evidence." *Griffin*, 330 F.3d at 737 (quoting *Dedvukovic v. Martin*, 36 F. App'x 795, 798 (6th Cir. 2002)).

Here, there is a significant disparity between the penalty offered in the plea, 41 months, and the 240 month sentence imposed on Sawaf after trial.  Even assuming, however, that Sawaf was inadequately advised of the mandatory guideline range, Sawaf was not prejudiced by inadequacy.  The facts of this case demonstrate that even with proper advice, Sawaf would not have entered a plea of guilty.  The evidence against Sawaf was overwhelming.  Yet, even now before this Court, Sawaf maintains his innocence.

The Sixth Circuit has expressed conflicting views as to how a defendant's assertion of actual innocence impacts *Strickland's* prejudice prong. *See Humphress v. United States*, 398 F.3d 855, 859 (6th Cir. 2005) (finding defendant did not establish reasonable probability that he would have pleaded guilty because of his assertions of innocence at trial); *Comrie v. United States*, 455 F. App'x 637, 640 (6th Cir. 2012) (holding that defendant had not established prejudice because "at all points [defendant] was quite adamant that he was innocent [and] wanted to go to trial"); *White v. United States*, 313 F. App'x 794, 798 (6th Cir. 2008) (per curiam) (holding that defendant was not prejudiced by constitutional errors in the plea process because he "admittedly never wanted to plead guilty to the indictment, and repeatedly indicated that he wished to go to trial").

In other cases, however, the Sixth Circuit has stated that "repeated declarations of innocence do not prove . . . that he would not have accepted a guilty plea." *Griffin*, 330 F.3d at 738 (citing *North Carolina v. Alford*, 400 U.S. 25, 33 (1970)). *Griffin* reasoned that "[d]efendants must claim innocence right up to the point of accepting a guilty plea, or they would lose their ability to make any deal with the government" and that "[i]t does not make

18

sense to say that a defendant must admit guilt prior to accepting a deal on a guilty plea." *Id.* Another Sixth Circuit panel appropriately summarized the somewhat conflicting case law: "[p]rotestations of innocence throughout trial are properly a factor in the trial court's analysis, however they do not, by themselves, justify summary denial of relief without an evidentiary hearing." *Smith*, 348 F.3d at 552.

The record supports this Court's conclusion that Sawaf would not have pleaded guilty even if he had been advised of the likelihood of a twenty-year prison term if he was convicted at trial. The Court is mindful of the Sixth Circuit's warnings that protestations of innocence before and during trial, alone, do not prove that a defendant would not have accepted a plea with effective advice.   This case, however, is unique in that at the evidentiary hearing, Sawaf unequivocally adopted his trial testimony, in which he maintained that he prescribed narcotics for a legitimate medical purpose. *Griffin's* reasoning applied to protestations of innocence *before* accepting a plea and throughout trial.   *See Griffin*, 330 F.3d at 738.   Here, Sawaf not only asserted his innocence at trial, but also at two sentencing hearings and at an evidentiary hearing on the present § 2255 petition. Sawaf's protestations of innocence go beyond *Griffin* and *Morris* and demonstrate that he was not prejudiced by the ineffective counsel.

Sawaf's selective memory also impacts his credibility.   Although Sawaf was able to recall in remarkably specific detail his interactions with Alred to support his motion regarding ineffective counsel, his memory failed when it came to portions of his own trial testimony. Sawaf was asked about his trial testimony at the evidentiary hearing in which he maintained that all of his prescriptions were written for a medical purpose. Unlike his memory with almost every other aspect of the case, Sawaf stated he did not remember his own testimony or the questions at trial because he did not have a transcript in front of him.  (DE 212 at 43).

At his first sentencing, Sawaf stated: "I have been a physician for 35 years, I respect my specialty. It's an honor. I'm a doctor, not a drug dealer." (DE 107 at 15). Then later, at the evidentiary hearing in 2012 Sawaf recalled, "I said that when I took the podium. *I said it correctly."* (DE 212 at 43)(emphasis added). At his third sentencing, on March 8, 2007, Sawaf again asserted his innocence and said that after he was offered the 41 month plea, he said, "[g]ive it to the jury, because I haven't done anything wrong." (DE 159 at 15). However, at the evidentiary hearing, Sawaf stated he could not recall this prior testimony. (DE 212 at 43-44). Finally, Sawaf was asked what happened to the state charges that were originally brought against him. Referring to those charges, Sawaf stated, "I was coerced to plead guilty." (*Id.* at 44). While arguing to this Court that he would have pleaded guilty only if he was given more effective counsel by Alred, Sawaf inexplicably maintains that when he pleaded guilty to the state charges—while represented by Alred—he was coerced to do so.

Other than the presumption created by the significant disparity between the plea offered and the ultimate sentence, the only evidence that Sawaf would have pleaded guilty was his own statement at the evidentiary hearing that he would have done so. This statement is totally self-serving and contradictory to other statements in which Sawaf maintained his innocence. This late statement is insufficient to overcome the mountain of evidence that Sawaf believed and still believes that he is innocent and would not have pleaded guilty even if he was properly advised about the impact of the Guidelines.

Sawaf's argument that he was prejudiced by Alred's deficient performance relies entirely on the Sixth Circuit's presumption of prejudice if there is a substantial disparity between the plea offered and the penalty imposed following trial. (DE 210 at 2, DE 207 at 4, DE 184 at 4-6). Sawaf's complete reliance on *Morris, Griffin*, and *Smith* fails for two reasons.

20

First, these cases create only a presumption of prejudice and do not require a finding of prejudice if there is a substantial disparity between the plea offered and the penalty imposed following trial. *See Morris*, 470 F.3d at 602; *Griffin*, 330 F.3d at 738; *Smith*, 348 F.3d at 552. The significant disparity creates a presumption of prejudice and is strong evidence of prejudice, but it does not *require* a finding of prejudice.

Second, these cases only address a defendant's assertions of innocence before trial, during trial, and at sentencing—but not at a later evidentiary hearing where the defendant must prove that he would have pleaded guilty given effective assistance of counsel. *See Morris*, 470 F.3d at 603 ("The government contends that it is relevant for [defendant's] *Strickland* claim that he maintained his innocence in discussions with his attorney pursuant to the state court proceedings."); *Griffin*, 330 F.3d at 738 (stating that although defendant asserted his innocence "at the suppression hearing and at sentencing . . . . the district court should at least have an evidentiary hearing to determine the factual issues and circumstances surrounding the plea offer"); *Smith* 348 F.3d at 552 (stating that the defendant "maintained his innocence throughout the proceedings, including . . . testifying under oath at trial" but "[t]hese declarations of innocence are not dispositive of the question . . . [and] do not, by themselves justify summary denial of relief without an evidentiary hearing.")

Declarations of innocence at an evidentiary hearing in support of a § 2255 petition can be relevant to determining *Strickland* prejudice. *See Humphress*, 398 F.3d at 859 ("[Defendant's] assertions of his innocence at trial *and during the magistrate's evidentiary hearing* lend additional support to the district court's conclusion that [he] would not have pled guilty.") (emphasis added).   However, unlike the defendants in *Morris*, *Griffin*, and *Smith*—Sawaf protested his innocence at the evidentiary hearing and adopted his prior trial testimony and

allocutions.  The Sixth Circuit's concern that "protestations of innocence belie [a] *later* claim that he would have accepted a guilty plea," *Griffin*, 330 F.3d at 738, do not apply here.    In addition to declaring his innocence at all prior stages, Sawaf is still proclaiming his innocence in conjunction with his claim that he would have accepted a guilty plea if only he had received better advice.  Sawaf's present declarations of innocence undermine his present claim that he would have pleaded guilty if he had received effective counsel.  At best, Sawaf is asking this Court to allow him to perjure himself and admit guilt to a crime that he believes he did not commit.

Finally, *Griffin* and *Smith* are distinguishable because in those cases the district judge denied the defendant's habeas petition based on prior assertions of innocence without an evidentiary hearing.  *See Griffin*, 330 F.3d at 739-40; *Smith* 348 F.3d at 552.  Moreover, the other cases that caution against using prior declarations of innocence are cases in which the district court found that the defendant had proved prejudice despite prior declaration(s) of innocence.  *See Morris,* 470 F.3d at 603; *Dedvukovic*, 36 F. App'x at 798.

Sawaf repeatedly maintained his innocence before trial.  Sawaf was twice afforded the right of allocution and both times he unmistakably asserted that he was innocent.  Moreover, in his second allocution, Sawaf referred to the government's plea offer and said that he rejected it and wanted the case to go to the jury because he did not do anything wrong.  These clear and repeated declarations of innocence distinguish this case from *Morris*, *Griffin*, and *Smith*.  At the evidentiary hearing, Sawaf adopted all of his prior testimony and reasserted his belief that he is innocent.  Given these continued assertions of innocence, it is unmistakably clear that Sawaf would not have pleaded guilty even if Alred had informed him of the likelihood of a 20-year prison term if convicted at trial because his Guideline range would be larger than the statutory

maximum.  Sawaf's willingness to accept the government's plea offer is the key component of *Strickland's* prejudice prong and an indispensable element of his ineffective assistance of counsel claim.  Because Sawaf cannot prove prejudice his claim must be denied.

## III. CONCLUSION

For all of the reasons stated above, **IT IS HEREBY ORDERED** as follows:

(1) The Report and Recommendation of the Magistrate Judge (DE 183) is **ADOPTED**, in part, and **INCORPORATED** by reference;

(2) Defendant Ali Sawaf's motion to vacate, set aside, or correct his sentence (DE 166) is **DENIED**;

(3) Defendant's objections (DE 184) to the Magistrate Judge's Report and Recommendation are **SUSTAINED**, in part, and **OVERRULED**, in part;

(4) This proceeding is **DISMISSED** and **STRICKEN** from the Court's active docket; and

(5) A separate, final, and appealable Judgment shall issue.

This 27th day of March, 2013.



Signed By:

*Karen K. Caldwell*

**United States District Judge**

23